United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DINA R. HARVEY,

          Plaintiff,

     v.

MICHAEL J. ASTRUE,

          Defendant.
_____/

No. 09-02038 CW

ORDER DENYING
PLAINTIFF'S
MOTION FOR
SUMMARY JUDGMENT
AND GRANTING
DEFENDANT'S
MOTION FOR
SUMMARY JUDGMENT
(Docket No. 15)

INTRODUCTION

     Plaintiff Dina R. Harvey moves for summary judgment.

Defendant Michael J. Astrue in his capacity as Commissioner of the

Social Security Administration opposes the motion and cross-moves

for summary judgment.  Having considered all of the papers filed by

the parties, the Court DENIES Plaintiff's motion for summary

judgment and GRANTS Defendant's cross-motion for summary Judgment.[1]

//

//

---

     [1] On February 2, 2010, Defendant filed a motion to strike a
portion of Plaintiff's twenty-six page brief opposing Defendant's
cross-motion for summary judgment.  Defendant characterizes this
brief as a reply, normally limited to fifteen pages under Civil
Local Rule 7-3; Plaintiff characterizes it as an opposition,
normally limited to twenty-five pages.  Although Plaintiff's brief
appears to be over-long under either interpretation, the Court
denies the motion to strike.

BACKGROUND

I.   Procedural History

On March 23, 2005, Plaintiff filed an application for Social Security Disability Benefits under Title II of the Social Security Act (SSA).  Administrative Record (AR) 162.  On the same day, she also filed an application for Supplemental Security Income under Title XVI.  AR 167.  Plaintiff alleged that she became disabled on June 15, 1999, due to back and foot pain.  AR 76.  On June 28, 2005, both claims were denied.  AR 72-80.  On July 20, 2005, Plaintiff filed a request for reconsideration, which was denied on November 10, 2005.  AR 81-83, 84-89.  In January, 2006, Plaintiff filed a timely request for hearing.  AR 90-91.  On May 14, 2008, Plaintiff, represented by a non-attorney representative, appeared and testified at a hearing held before an Administrative Law Judge (ALJ).  AR 29-71.  On June 25, 2008, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act because she could perform a significant number of jobs in the national economy.  AR 12-24.

On July 31, 2008, Plaintiff submitted an appeal to the Social Security Appeals Council, challenging the ALJ's decision.  AR 491-498.  On September 21, 2008, Plaintiff submitted new evidence: a form filled out on August 7, 2008 by Dr. Anna Silva, one of Plaintiff's treating physicians.  On March 6, 2009, the Appeals Council denied Plaintiff's request for review.  AR 17-10. Plaintiff obtained counsel and initiated the present action for judicial review under 42 U.S.C. § 405(g), seeking summary judgment or, in the alternative, remand to the Commissioner for further

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  proceedings.

2  II.  Factual History

3       A.  Plaintiff's Personal History

4       Plaintiff was born on March 23, 1971.  She graduated from high

5  school and attended some college classes.[2]  She worked as a

6  customer service representative at a car dealership for several

7  months in 1995, and as a childcare provider from 1996 to 1999.  AR

8  178.  Plaintiff worked until July 1, 1999, when back and foot pain

9  made her unable to lift the children or stand for more than an hour

10 at a time.  AR 178.  She has not worked since that time.  AR 40.

11 Plaintiff's last date insured for purposes of her Title II

12 disability insurance benefits claim was December 31, 2004.

13      B.  Plaintiff's Physical Medical History

14      Plaintiff's medical documents indicate a long history of

15 bilateral plantar fasciitis[3].  AR 21.  Plaintiff's condition

16 reportedly improved with orthotics in 1996, but worsened again in

17 2003.  AR 21.

18      On August 16, 2004, podiatrist David Lin, D.P.M., examined

19 Plaintiff, noting a prior diagnosis of plantar fasciitis and

20 previous "conservative treatment" including stretching, orthotics,

21 _____

22      [2]There is some dispute about Plaintiff's actual academic
   abilities, but the record contains a transcript showing that
23 Plaintiff graduated from high school on June 16, 1989.  AR 211.  A
   community college transcript shows several years of classes
24 undertaken on a part-time basis.  AR 221-223.

25      [3]Bilateral plantar fasciitis is a condition stemming from
   inflammation of the plantar fascia which results in foot or heel
26 pain.  Stedman's Medical Dictionary 652 (27th Ed. 2000)(hereinafter
   Stedman's).  The plantar fascia is a sheet of fibrous tissue below
27 the skin of the sole of the foot.  Id. at 648, 649.

28                                 3

and injections, all with little relief.  AR 288.

On January 6, 2005, Plaintiff's feet were examined by podiatrist John Schuberth, D.P.M.  AR 281.  He found "no abnormalities whatsoever," except for some thickening under the hallux[4] of the left foot consistent with the findings of an MRI performed shortly before his examination.  AR 281.  Although Plaintiff did complain of occasional back pain, Dr. Schuberth noted no history of spine treatment.  AR 281.  He thought that surgery would be unlikely to improve Plaintiff's symptoms, and believed that work with a pain specialist might allow her to become more functional.  AR 281.

In a February 23, 2005 letter summarizing Plaintiff's medical history, Plaintiff's primary care provider, Dr. Silva, noted that Plaintiff experienced continuing pain despite stretching, orthotics, cortisone injections and anti-inflammatories.  AR 274. Dr. Silva wrote that Plaintiff had enrolled in a chronic pain treatment program, and explained that she was unable to work as a nanny due to her chronic plantar fasciitis.  AR 274.

On November 4, 2005, Frederick Gaines, M.D., spoke with Plaintiff about pain management options.  AR 318.  He noted that Plaintiff was encouraged to enter a chronic pain program because surgery was unlikely to provider her with relief.  AR 318.

On December 16, 2005, Dr. Silva wrote another letter on Plaintiff's behalf, detailing Plaintiff's history of plantar fasciitis and also noting the onset of chronic low back pain.  Dr.

---

[4]The hallux is the largest toe on the foot.

4

United States District Court
For the Northern District of California

Silva referred to an MRI showing a Tarlov's cyst[5] and degenerative changes in Plaintiff's lower spine. AR 265. Dr. Silva stated that Plaintiff was unable to work. AR 265. Specifically, Dr. Silva opined that Plaintiff was unable to walk more than twenty-five to thirty minutes, could not sit or stand for more than an hour, and could not lift more than ten pounds. AR 265.

In November, 2006, Plaintiff underwent bilateral endoscopic plantar fasciectomies.[6] AR 348. Her surgeon, Dr. Jeffrey Amen, reported "significant improvements in the symptoms" after the surgery, although pain remained. AR 343.

On February 1, 2007, Jessica Glassman, M.D., wrote a letter on Plaintiff's behalf, noting Plaintiff's plantar fasciitis, as well as degenerative disc disease[7]. AR 432. Dr. Glassman believed Plaintiff was unable to work. AR 432. She noted that Plaintiff was unable to sit or stand for more than twenty to thirty minutes because of pain. AR 432.

On September 11, 2007, Plaintiff was examined by Calvin Pon, M.D., for an orthopedic consultation. AR 359. Dr. Pon found that, although Plaintiff could sit, stand or walk for only fifteen to

---

[5] A Tarlov's cyst is a cyst found in the lower spinal cord. Stedman's 448. A cyst is a sac containing a gas, fluid, or semisolid material with a membranous lining. Id. at 445-46.

[6] A bilateral endoscopic plantar fasciectomy is the excision of strips of fascia from the sole of the foot. Stedman's 652.

[7] Degenerative disc disease, also known as osteoarthritis of the spine, is the erosion of the discs of the spine, resulting in pain and loss of function. Stedman's 1282.

United States District Court
For the Northern District of California

thirty minutes at a time, she should be able to stand or walk for four to six hours total during an eight hour work day, and sit for a total of six hours.  AR 361.  He further found she should only occasionally stoop, kneel, squat, climb ladders or crawl.  AR 361.

On April 9, 2008, Plaintiff had a second MRI scan of her lower spine.  AR 481.  The MRI indicated that her spine was "essentially unchanged," and that she had mild degenerative disc disease.  AR 481.

C.   Plaintiff's Mental Medical History

In 1991, an examiner at Marin Community College indicated that Plaintiff met the relevant criteria for a learning disability.  AR 468.  The examiner noted that Plaintiff had problems with verbal comprehension, verbal expression, reading comprehension, mathematical ability, vocabulary, and auditory memory recall.  AR 469.  Tests conducted by the examiner indicated that Plaintiff read at the eighth-grade level and had only fourth-grade math skills.  AR 469.

On April 24, 2007, Plaintiff consulted psychiatrist David Richman, M.D., who diagnosed her with depression resulting from chronic pain, and prescribed anti-depressants.  AR 408.  On March 20, 2008, Dr. Richman submitted a mental impairment medical source statement.  AR 399.  He indicated that Plaintiff suffered from depression, with symptoms including appetite loss, sleep problems, emotional problems, pervasive loss of interest, and decreased energy.  AR 399.  Dr. Richman noted Plaintiff had been taking Cymbalta, a prescription anti-depressant.  AR 400.  He did not think Plaintiff had a low IQ or reduced intellectual functioning.

United States District Court
For the Northern District of California

AR 401.   He rated her ability to perform a wide variety of mental abilities good-to-fair, and her functional limitations "moderate." AR 402-03.   He believed that she would probably need to miss work three or more times per month because of her impairments.   AR 401.

On September 12, 2007, Deborah von Bolschwing, Ph.D., examined Plaintiff for a psychological disability evaluation.   Dr. Bolschwing found that Plaintiff possessed low-average to average intelligence and general intellectual functioning, with mildly fluctuating attention and concentration.   AR 370.   She opined that, although Plaintiff might have mild dyslexia, it did not interfere with her ability to perform cognitive tasks.   AR 371.

III. Administrative Law Judge's Disability Determination

In his June 25, 2008 decision, the ALJ employed the five-step sequential evaluation process[8] outlined in 20 C.F.R. § 404.1520, and found that Plaintiff was not disabled within the meaning of the SSA.   AR 17.

At step one of the five-part analysis, the ALJ found that Plaintiff had not worked since the alleged disability onset date. AR 19.   At step two, the ALJ found that Plaintiff had three severe impairments:   chronic bilateral plantar fasciitis, degenerative

---

[8]In order to make a disability determination, the ALJ must apply a sequential five-step evaluation process to the disability claim pursuant to 20 C.F.R. § 404.1520: (1) is the claimant engaged in substantial gainful work activity; (2) if not, does the claimant have a severe impairment, or combination of impairments; (3) if so, are the impairments listed in, or as severe as, those listed in Appendix 1; (4) if not, do the impairments preclude the claimant from performing past relevant work; and (5) if so, is other work precluded?   20 C.F.R. § 404.1520(b)-(g).   The plaintiff bears the burden of persuasion in steps (1) through (4); the Commissioner has the burden at step (5).   Bowen v. Yuckert, 482 U.S. 137, 141 (1987); 20 C.F.R.  § 1520(f).

disc disease of the lower spine and an affective disorder.  AR 19.
The ALJ noted that Plaintiff alleged that she had severe auditory
dyslexia, but failed to support her claim with any medical records
or other evidence.  AR 19.  Moreover, the ALJ noted that Dr.
Bolschwing found that Plaintiff had at most "mild" dyslexia and
that Dr. Richman similarly found no severe mental impairments.  AR
371, 401.  Accordingly, the ALJ found no severe auditory dyslexia.

At step three, the ALJ determined that Plaintiff's
impairments, singly or in combination, were not severe enough to
meet or medically equal any of the impairments listed in Appendix 1
of the Regulations.  AR. 20.

Prior to steps four and five of the analysis, the ALJ weighed
the medical and other evidence in the record to assess Plaintiff's
residual functional capacity (RFC).  AR 20.  The ALJ found that
Plaintiff had an RFC to perform sedentary[9] work, as defined in 20
C.F.R. §§ 404.1567(a) and 416.967(a), "except with limitation to
occasional bending, stooping, crawling, squatting, crouching and
kneeling and the need for a sit or stand option every 30 minutes."
AR 20.  The ALJ considered a variety of evidence in making his
determination, including Plaintiff's testimony at the hearing and
the testimony of her relatives, and medical opinion evidence from
Drs. Amen, Bolschwing, Glassman, Richman and Silva.  AR 21-23.  The
ALJ afforded limited weight to the testimony of Plaintiff and her

_____

[9]Sedentary work "involves lifting no more than ten pounds at a
time and occasionally lifting or carrying articles like docket
files, ledgers, and small tools."  20 C.F.R. §§ 404.1567(a);
416.929.  It may involve occasional walking or standing.  Id.

United States District Court
For the Northern District of California

relatives to the extent that it alleged limitations in excess of those described in his RFC, because he found that the testimony was not entirely credible in light of the medical evidence and Plaintiff's prior conduct.  AR 21.  The ALJ also found that Dr. Richman's opinion that Plaintiff would need to be absent from work more than three times per month was not supported by the record, including Dr. Richman's own statements, and thus was attributable to Plaintiff's subjective complaints.  AR 22-23.

At step four of the disability analysis, the ALJ found that Plaintiff was precluded from working in her past relevant occupations of childcare provider and customer service representative.  AR 23.  The ALJ based this finding on the RFC testimony and the testimony of a vocational expert (VE).

At step five, based on the VE's testimony, the ALJ concluded that Plaintiff was capable of performing jobs existing in significant numbers within the national and local economy.  AR 23.  In particular, the VE indicated that Plaintiff would be able to perform the jobs of "Order Clerk" and "Final Assembler, Optical Goods," both of which allow for a sit/stand option every thirty minutes, as Plaintiff's RFC required.  AR 24.  Consequently, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled within the meaning of the SSA.  AR 24.

IV.  New Evidence Presented to the Appeals Council

As noted above, along with her appeal to the Social Security Appeals Council, Plaintiff submitted an August 7, 2008 form filled out by Dr. Silva, presenting in greater detail Dr. Silva's opinion on Plaintiff's limitations.  AR 500.  On the form, Dr. Silva

indicated that Plaintiff's limitations dated from 1996, that Plaintiff could sit for only ten minutes at a time, and stand or walk for only five minutes at a time and that Plaintiff would probably have to miss work at least twice a month.  AR 500, 502. At the bottom of the form, Dr. Silva also wrote, "I think it's completely inappropriate for me to have completed this," because she had not treated Plaintiff since 2005.  AR 504.

                        LEGAL STANDARD

     A district court reviewing a denial of Social Security benefits reviews the final decision of the Commissioner.  42 U.S.C. § 405(g).  When the Appeals Council denies review to a claimant, the ALJ's decision becomes the Commissioner's final decision.  20 C.F.R. § 404.981.

     A court cannot set aside a denial of benefits unless the ALJ's findings are based upon legal error or are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orteza v. Shalala, 50 F.3d 748, 749 (9th Cir. 1995).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

     To determine whether an ALJ's decision is supported by substantial evidence, a court reviews the record as a whole, not just the evidence supporting the decision of the ALJ.  Walker v. Matthews, 546 F.2d 814, 818 (9th Cir. 1976).  A court may not affirm the Commissioner's decision simply by isolating a specific

United States District Court
For the Northern District of California

10

United States District Court
For the Northern District of California

quantum of supporting evidence.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Rather, a court must weigh the evidence which supports the Commissioner's conclusions and that which does not. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

If there is substantial evidence to support the decision of the ALJ, it is well-settled that the decision must be affirmed even when there is evidence on the other side.  Hall v. Sec'y of Health, Educ., & Welfare, 602 F.2d 1372, 1374 (9th Cir. 1979).  The ALJ's decision should also be affirmed when the evidence is susceptible to more than one rational interpretation.  Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984).  If supported by substantial evidence, the findings of the Commissioner as to any fact shall be conclusive.  42 U.S.C. § 405(g); Vidal v. Harris, 637 F.2d 710, 712 (9th Cir. 1981).

Under the Social Security Act, "disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).  The impairment must be so severe that the claimant "is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work."  42 U.S.C. § 423(d)(2)(A).  In addition, the impairment must result "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory techniques."  42 U.S.C. § 423(d)(3).

11

DISCUSSION

Plaintiff argues that: (1) the Appeals Council failed adequately to weigh new evidence Plaintiff submitted to it after the ALJ's determination; (2) the ALJ failed properly to weigh the opinions of Plaintiff's treating physicians; (3) the ALJ erred by not rating Plaintiff's alleged mental impairment severe; (4) the ALJ improperly discredited Plaintiff's subjective testimony; (5) the ALJ improperly determined Plaintiff's RFC; and (6) the ALJ violated SSR 00-4P in relying on VE testimony contrary to the Dictionary of Occupational Titles (DOT).

I.  New Evidence Presented to the Appeals Council

The Appeals Council must review a case if "new and material information is submitted" after the ALJ's determination.  20 C.F.R. §§ 404.970(b).  In order to be material, evidence "must 'bear directly and substantially on the matter in dispute.'"  <u>Mayes v. Massanari</u>, 276 F.3d 453, 462 (9th. Cir. 2001) (citations omitted). When new evidence is considered, the Appeal Council will order review of a case when it finds that the ALJ's decision is against the weight of all the evidence currently in the record.  20 C.F.R. §§ 404.970(b).  Remand is appropriate "'only where there is a *reasonable possibility* that the new evidence would have changed the outcome'" of the ALJ's decision.  <u>Booz v. Sec'y of Health and Human Servs.</u>, 734 F.2d 1378, 1380-81 (9th Cir. 1984) (citations omitted).

Plaintiff argues that the form filled out by Dr. Silva, submitted to the Appeals Council after the ALJ's decision, constituted new and material evidence and that the Appeals Council failed adequately to consider it in affirming the ALJ's

12

United States District Court

For the Northern District of California

determination that Plaintiff was not disabled.  Defendant argues that Dr. Silva's 2008 form was not material because it merely reiterated findings summarized in her 2005 letters and was based on the same underlying examination.

Although the content of Dr. Silva's 2005 letters and 2008 form was based on the same physical examinations of Plaintiff, they express quite different conclusions.  In Dr. Silva's December 16, 2005 letter, she stated that Plaintiff "cannot walk longer than twenty-five to thirty minutes before developing heel pain," and that she "cannot sit or stand for long periods of time (more than one hour)."  AR 431.  In the 2008 submission, Dr. Silva indicated that Plaintiff can walk for only five minutes without rest, and can sit for only ten minutes without needing to get up.  AR 502. Furthermore, in the 2008 submission, Dr. Silva indicated that Plaintiff "cannot" sit or stand for any portion of an eight hour work day, and would need to take unscheduled breaks every five minutes as a result of her pain.  AR 502.

The Appeals Council found that Dr. Silva's 2008 opinion was not supported by the medical evidence.  AR 7-8.  As Defendant points out, Dr. Silva's 2008 opinion was based on the same underlying physical findings as her 2005 letter.  She provides no reason why her assessment of Plaintiff's ability to walk and sit was revised dramatically downward three years later.  The assessments in the 2008 letter do not match the assessments of the two physicians who examined Plaintiff prior to 2005, Dr. Lin and Dr. Schuberth.  AR 288, 281.  Dr. Silva herself stated that she thought it was "completely inappropriate" for her to have filled

13

**United States District Court**
For the Northern District of California

out the assessment three years after her last contact with Plaintiff, thus implying that her 2008 opinion was not reliable. AR 504.  Given these facts, there is no reasonable possibility that the ALJ would have made a different decision had he had the benefit of Dr. Silva's 2008 opinion.  Therefore, remand on this basis is not warranted.

II.  Weighing of Physician Opinion Testimony

Plaintiff argues that the ALJ failed properly to weigh the testimony of her treating physicians.

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The issue of whether a claimant is disabled under the meaning of the Social Security Act is an issue reserved for the Commissioner, and therefore the opinion of a treating physician that a claimant is disabled will not be given special significance. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  Such opinions, however, "must not be disregarded."  Social Security Regulations (SSR) 96-5p at 5.

On issues not reserved for the Commissioner, where the treating physician's opinion is not contradicted by an examining physician, that opinion may be rejected only for "clear and convincing reasons." Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Where a treating physician's opinion is contradicted by another doctor, the Commissioner may reject the treating physician's

United States District Court
For the Northern District of California

opinion, but must provide "specific, legitimate reasons" supported by substantial evidence in the record for doing so.  Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  Physician opinions that are conclusory and inadequately supported by clinical findings need not be credited.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2001).

When the opinion of a medical source "is inadequate for [the Commissioner] to determine whether [a claimant] is disabled," -- i.e., when it is ambiguous -- the ALJ must attempt to re-contact the medical source to obtain clearer and more complete information. 20 C.F.R. §§ 404.1512(e), 416.912(e).

A.   Dr. Silva

Plaintiff contends that the ALJ improperly failed to consider treating physician Dr. Silva's opinion, expressed in her December 2005 letter, that Plaintiff was unable to work.  Plaintiff concedes that the issue of disability is reserved to the Commissioner, and thus that Dr. Silva's opinion is due no special significance.  She argues, however, that the ALJ improperly disregarded Dr. Silva's 2005 opinion or, alternatively, that the opinion was incomplete or ambiguous so that the ALJ was under a duty to re-contact her.

Because Dr. Silva's opinion that Plaintiff could not work was on an issue reserved for the Commissioner under 20 C.F.R. §§ 404.1527(e)(1), this portion of Dr. Silva's opinion was not due any special significance or weight.  However, the ALJ remained under an obligation to consider Dr. Silva's determination.  See SSR 96-5p.

Here, the ALJ properly considered Dr. Silva's opinion.  The

15

**United States District Court**
For the Northern District of California

ALJ interpreted Dr. Silva's statement in her February, 2005 letter that Plaintiff was "unable to work as a nanny" to mean that Plaintiff would be able to undertake other, less demanding work. AR 22.   The ALJ also noted that, in her December, 2005 letter, Dr. Silva spelled out Plaintiff's capacity for other work more clearly, indicating ability to walk and stand for twenty-five to thirty minutes and sit for up to one hour, and ability to lift up to ten pounds.   AR 22.   It is clear that the ALJ interpreted Dr. Silva's statement to mean that Plaintiff could not work in any job which did not accommodate the restrictions noted in the letter, all of which the ALJ incorporated into his RFC.

Nor was Dr. Silva's opinion incomplete.   Dr. Silva stated that Plaintiff was unable to work due to persistent pain, and then noted "specifically" the impairments noted above and accepted by the ALJ in his RFC.   AR 431.   Dr. Silva thus laid out in detail her conclusions, both as to ultimate disability and as to the factors contributing to her determination that Plaintiff was unable to work.   The ALJ was under no duty to re-contact Dr. Silva because her opinion was not ambiguous or otherwise inadequate to determine whether Plaintiff was disabled.

B.   Dr. Glassman

Plaintiff argues that the ALJ improperly failed to consider Dr. Glassman's opinion that Plaintiff's impairments made her unable to work, or, alternatively, that the ALJ had a duty to re-contact Dr. Glassman because Dr. Glassman's opinion was ambiguous.

As stated above, ability to work is an issue reserved for the Commissioner, so the ALJ was under a duty only to consider Dr.

**United States District Court**
For the Northern District of California

Glassman's opinion, not to give it any special significance. The ALJ noted that he considered Dr. Glassman's letter, including her opinion that Plaintiff was unable to work. AR 22. Nor was the opinion ambiguous. Although her letter opinion was brief, Dr. Glassman indicated the medical impairments Plaintiff suffered from, and that Plaintiff was unable to sit or stand for more than twenty to thirty minutes because of pain. AR 432. The ALJ accepted Dr. Glassman's opinion about Plaintiff's ability to sit and stand, and incorporated it into his RFC. AR 22. The ALJ was under no duty to re-contact Dr. Glassman simply because her statement was shorter than that of other treating physicians who agreed with her diagnosis.

        C.   Dr. Richman

        Plaintiff argues the ALJ erred when he rejected Dr. Richman's opinion that Plaintiff would have to be absent from work more than three times a month.

        The ALJ rejected Dr. Richman's opinion because he found it unsupported by the record, including Dr. Richman's own records which indicated that Plaintiff's mood was more stable as a result of treatment with anti-depressants. AR 22. Therefore, the ALJ attributed Dr. Richman's opinion regarding work absence to Plaintiff's subjective complaints, which the ALJ determined to lack credibility, and he disregarded the opinion for that reason. AR 22.

        The ALJ properly concluded that Dr. Richman's opinion about Plaintiff's projected work absence was not supported by the record. Emails exchanged between Dr. Richman and Plaintiff indicate that

17

United States District Court
For the Northern District of California

Plaintiff's depression was being adequately controlled by her medication and that she was "feeling good."  AR 438, 458. Similarly, Dr. Bolschwing, an examining psychologist, found that Plaintiff's depression appeared to be well controlled by medication.  AR 371.

Because Dr. Richman's opinion that Plaintiff would be absent from work more than three times per month was contradicted, the ALJ was required to present only "specific, legitimate reasons" for discounting it.  See Matney, 981 F.2d at 1019.  The ALJ noted the conflict between Dr. Richman's opinion and his records showing that Plaintiff's depression was being controlled by prescription medication.  AR 22.  This constitutes a specific and legitimate reason for disregarding Dr. Richman's opinion, and thus the ALJ did not err.

III. Subjective Testimony

   A.   Plaintiff's Subjective Testimony

Plaintiff argues that the ALJ improperly found her not credible because he failed to provide clear and convincing reasons for doing so.

In Cotton v. Bowen, 799 F.2d 1402, 1407-08 (9th Cir. 1986), the Ninth Circuit developed a threshold test to determine the credibility of a claimant's subjective symptom testimony.  Under Cotton, a claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (quoting Cotton, 799 F.2d at 1407-08); see also Smolen v. Chater, 80 F.3d 1273, 1282

18

**United States District Court**
For the Northern District of California

(9th Cir. 1996).

Once a claimant meets the <u>Cotton</u> test, "the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupportable by objective evidence. Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be 'clear and convincing.'" <u>Lester</u>, 81 F.3d at 834 (quoting <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)); <u>Smolen</u>, 80 F.3d at 1281. When listing the findings supporting a conclusion that a plaintiff's testimony is incredible, the ALJ must consider "all of the available evidence" in analyzing the severity of the claimed pain. SSR 88-13. Factors to be analyzed include: (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors; (3) type, dosage, effectiveness and adverse side effects of any pain medications; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the plaintiff's daily activities. <u>Id.</u>; <u>see Fair</u>, 885 F.2d at 603 (types of activities ALJ may rely on to find pain allegations not credible include the type of daily activities performed by plaintiff and whether plaintiff sought or followed treatment); <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1166 (9th Cir. 2001) (finding rejection of plaintiff's alleged pain justified where plaintiff had little evidence of spinal abnormalities, had not used strong pain medication, had not participated in pain management or physical therapy, and limited daily activities by choice not necessity). When pain is an issue, the plaintiff's demeanor at a hearing before

19

the ALJ is not conclusive evidence of the plaintiff's credibility. Gallant, 753 F.2d at 1455. Medical evidence is still relevant in determining the severity of a plaintiff's alleged pain and its disabling effects. 20 C.F.R. § 404.1529(c)(2); Rollins, 261 F.3d at 857.

Here, the ALJ determined that Plaintiff had presented evidence of a medical impairment that could be reasonably expected to produce the sort of pain she alleged. Accordingly, the ALJ was required to present "clear and convincing" reasons for rejecting Plaintiff's testimony. Lester, 81 F.3d at 834.

The ALJ found Plaintiff's testimony not credible to the extent that it alleged limitations in excess of the RFC. AR 21. The ALJ provided four specific reasons for his finding. First, the ALJ found that Plaintiff's testimony conflicted with the opinions of her treating and examining physicians, who all indicated that she had greater ability to work than her testimony suggested. AR 21. Second, the ALJ found that Plaintiff was not taking pain medication and had refused it in the past, suggesting that her pain was not as severe as she alleged. AR 21. Third, the ALJ noted that the record showed there was no indication of treatment for plantar fasciitis between 1996 and 2003. Finally, the ALJ noted that Plaintiff's statement that she obtained no relief from surgery in 2006 was directly contradicted by the statement of her surgeon, who noted "significant improvement in the symptoms." AR 21. The ALJ provided a list of facts from the record supporting his determination. AR 21-22. In the list, the ALJ noted that MRI scans of Plaintiff's back showed mild degeneration not consistent

with Plaintiff's allegedly disabling lower back pain.   AR 22.

Plaintiff argues the ALJ's statement that "all" physicians who examined her found that she had a greater capacity for work than she claimed is inaccurate because Dr. Silva and Dr. Glassman opined that she was unable to work.  Strictly speaking, the ALJ's statement was inaccurate in light of the statements of these two doctors.  However, as noted above, these opinions were on issues reserved to the Commissioner; apart from these issues, the opinions of the two doctors indicated that Plaintiff had the ability to perform in accordance with the ALJ's RFC.  Thus, although the ALJ could have more clearly stated that Plaintiff's alleged pain and dysfunction was inconsistent with the physical findings of all treating and examining doctors, any error was in choice of words rather than in substance.  The ALJ correctly noted that, to the extent that Plaintiff's subjective complaints indicated pain and dysfunction that conflicted with the ALJ's RFC, they conflicted with the physical limitations noted by her treating and examining doctors.

Next, Plaintiff asserts that, to discount her testimony, the ALJ improperly relied upon the fact that she was not taking pain medication at the time of the hearing.  Plaintiff argues that although she was not taking pain medication at the time of the hearing, she has taken a variety of pain medications over the years, and, thus, the ALJ's reasoning is not "clear and convincing."

The ALJ's reasoning was not improper.  When a claimant alleges severe pain, but receives minimal treatment, an ALJ may properly

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

question the credibility of the testimony.  <u>Fair v. Bowen</u>, 885 F.2d 597, 603-604 (9th Cir. 1989).  Furthermore, the ALJ did not assert that Plaintiff has never taken pain medication, but instead noted that on at least two occasions -- at the hearing itself, in 2008, and two years before, in 2005 -- Plaintiff complained of severe pain but refused treatment with pain medication.  AR 21, 43, 305. Standing alone, failure to take pain medication despite alleging severe pain might not be sufficient to constitute "clear and convincing reasons," but it was not improper for the ALJ to consider this factor in making his credibility determination.

Plaintiff also argues that the absence of treatment for plantar fasciitis prior to 2003 is an improper basis to question her credibility, because it is irrelevant to her current status. Although Plaintiff's pre-2003 treatment is not directly relevant to her post-2003 disability, she alleges disability beginning on July 15, 1999.  Thus, the fact that Plaintiff received minimal treatment for the first four years of her alleged disability was a valid basis for the ALJ to question her credibility.  <u>See</u> <u>Fair</u>, 885 F.2d at 603-604 (holding that lack of treatment for allegedly severe conditions is a proper basis for an ALJ to question the credibility of a claimant's testimony).

Next, Plaintiff argues that the contradiction between her statements about the efficacy of her 2006 surgery and her surgeon's statements was an improper basis for the ALJ to question her credibility.

When questioned by the ALJ, Plaintiff claimed no improvement following her 2006 orthopedic surgery.  AR 21, 44.  The ALJ noted

22

that this directly contradicted the statements of Plaintiff's surgeon, who noted "significant improvement in the symptoms" post-surgery, although some pain remained.  AR 21, 343.  The ALJ's determination that this conflict undermined Plaintiff's credibility was not improper.  Plaintiff argues that the ALJ failed to consider this contradiction in light of the record as a whole, and particularly in the light of testimony from Plaintiff's parents and husband corroborating her statement that the surgery provided no relief.  However, as discussed below, the ALJ properly gave limited weight to this testimony, based as it was on Plaintiff's statements, for the same reasons he questioned Plaintiff's testimony.

Finally, Plaintiff asserts that the ALJ's stated findings regarding Plaintiff's credibility were insufficiently precise and failed to show with sufficient clarity which portion of Plaintiff's testimony the ALJ rejected and which portion he accepted.

When making a credibility determination, an ALJ "must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ held that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessment herein." AR 21.  The ALJ's RFC determination indicated that Plaintiff had the ability to do sedentary work, with limitations on posture and a stand/sit option every thirty minutes.  AR 20.  Thus, the ALJ found that Plaintiff's

United States District Court

For the Northern District of California

claim of severe impairments was not credible, while her testimony that was consistent with this assessment was credible.  He noted particular statements by Plaintiff that were not credible, including her statements about the 2006 surgery, her pain at times she was not taking pain medication, and the severity of her lower back pain.  AR 21-22.

These findings were sufficiently precise and clear to allow the Court to determine which portion of Plaintiff's testimony the ALJ rejected.

Thus, the ALJ provided an adequately detailed summary of his credibility findings, and none of the reasons given by the ALJ for questioning Plaintiff's credibility were improper.  Taken as a whole, and in light of the ALJ's citation to the record to support each of his findings, the ALJ provided "clear and convincing" reasons for crediting only that portion of Plaintiff's subjective pain testimony he found consistent with his RFC.

B.    Testimony of Plaintiff's Family Members

Plaintiff argues that the ALJ rejected the corroborating testimony of her family members without giving specific reasons for doing so.

When an ALJ discounts the testimony of a lay witness, he must give reasons that are germane to that witness.  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).  When an ALJ properly rejects the testimony of a claimant, and the testimony of witnesses testifying in the claimant's favor is substantially similar to the testimony of the claimant, the ALJ's statement of reasons for rejecting the claimant's testimony can also be used to reject the witnesses'

testimony.   See Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (holding that ALJ's reasons for rejecting claimant's testimony also showed that ALJ gave germane reasons for rejecting substantially similar testimony of testifying witnesses).

Here, the ALJ gave "limited weight" to the testimony of Plaintiff's family members, because he determined that their testimony essentially reiterated Plaintiff's subjective complaints. AR 21.   Accordingly, because the ALJ properly determined that portions of Plaintiff's testimony lacked credibility, he also provided germane reasons for questioning the credibility of portions of the testimony of her family.

IV.   The ALJ's RFC Determination

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because he failed to find Plaintiff's auditory dyslexia "severe" within the meaning of 20 C.F.R. § 404.1520(a)(4)(ii).

The ALJ based his finding that Plaintiff did not have severe auditory dyslexia primarily on the report of Dr. Bolschwing, a psychological consultive evaluator who examined Plaintiff in September, 2007.  AR 19.  Dr. Bolschwing reported that Plaintiff's intellectual functioning was in the low average to average range, with "mildly fluctuating attention and concentration."  AR 370. Treating psychologist Dr. Richman indicated in a March, 2008 assessment that Plaintiff did not have a low IQ or reduced intellectual functioning.  The examiner who assessed Plaintiff when she entered community college thought she might have dyslexia, and found that her reading ability was at the eighth grade level and

United States District Court
For the Northern District of California

her computational ability at the fourth grade level.  AR 469.  The ALJ considered the testimony of Plaintiff's parents that she had auditory dyslexia, and that she was given an Individual Educational Plan during her school years.  Even though the ALJ found that the weight of the evidence showed that any auditory dyslexia was mild, not "severe" within the meaning of 20 C.F.R. § 404.1520(a)(4)(ii), he included Plaintiff's reading and computational limitations in his RFC.  AR 20.

The opinions of examining and treating physicians are "substantial evidence."  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  Because neither of the physicians who assessed Plaintiff's mental functioning found a severe mental impairment, the Court finds that the ALJ's determination that Plaintiff's auditory dyslexia was not severe was supported by substantial evidence.

V.    Testimony of Vocational Expert

A.   Sit/Stand Option

Plaintiff argues that the ALJ improperly relied on the testimony of the VE in determining that there were two jobs Plaintiff could do that allow for the sit/stand option specified in the RFC.  Plaintiff argues the VE's testimony conflicted with the DOT, because the DOT did not indicate whether the jobs had a sit/stand option, and the ALJ was therefore required to explore the conflict before crediting the VE's testimony.

In determining whether there are jobs a claimant is capable of performing, an ALJ may consult a VE, whose "recognized expertise provides the necessary foundation for his or her testimony."

United States District Court
For the Northern District of California

Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005).  If there is a conflict between the testimony of the VE and the DOT, neither "trumps" the other, and the ALJ is required to resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE's testimony rather than the DOT.  SSR 00-4p.  When a claimant has unusual limitations on his or her ability to sit or stand, a VE should be consulted to clarify the implications for the occupational base.  SSR 83-12.

Here, the ALJ did consult a VE, and incorporated Plaintiff's requirement of a sit/stand option every thirty minutes in his hypothetical to the VE.  AR 62.  The VE responded that there were at least two jobs that an individual with Plaintiff's impairments would be able to perform, Order Clerk and Final Assembler, Optical Goods.  AR 62.  The VE clarified that both jobs provided a sit/stand option at least every thirty minutes.  AR 62.  After some questioning of the VE by Plaintiff's representative, the ALJ asked the VE if any aspects of her testimony deviated from the DOT.  AR 66.  The VE replied that it had not.  AR 66.

The ALJ complied with the requirements of SSR 83-12.  He properly consulted a VE, who indicated that there were jobs Plaintiff was capable of performing even though she required a stand/sit option every thirty minutes.  He also confirmed with the VE that her testimony did not deviate from the DOT.

A conflict must exist between the VE's testimony and the DOT in order to the trigger the ALJ's responsibility under SSR 00-4p to resolve the conflict.  Here, the DOT is silent on whether the jobs

27

United States District Court
For the Northern District of California

in question allow for a sit/stand option.  See DOT 209.567-014
(Order Clerk); DOT 713.637-018 (Final Assembler, Optical Goods).
Plaintiff cites Novak v. Comm'r of Soc. Sec., 2009 WL 1922297
(D.S.C. 2009) for the proposition that the DOT's silence creates a
conflict.  In Novak, the ALJ treated the DOT's silence on an issue
as a conflict with the VE's testimony, but did not explore the
conflict, and the District Court held that he had thus failed to
comply with the procedure required by SS 00-4p.  Id. at 3.  The
court remanded the case to the ALJ.  Id.

The Court does not find Novak persuasive.  Where the DOT does
not include information about a particular aspect of a job -- such
as the existence of a sit/stand option -- it is proper to consult
with a VE, as SSR 83-12 instructs.  Such testimony supplements the
DOT, rather than conflicting with it.  Accordingly, the ALJ did not
err.

B.  Math and Reading Limitations

Plaintiff also argues that the job of Order Clerk requires a
reasoning ability in excess of Plaintiff's RFC, which limited her
to "simple, repetitive tasks." AR 20.

The VE stated that the job of Order Clerk required
mathematical ability in the low average range (the tenth to thirty-
third percentile) and general learning ability in the average
range.  AR 64.  She indicated, however, that she believed that a
person with Plaintiff's academic abilities (characterized as sixth
grade reading and fourth grade math by Plaintiff's representative)
would be able to perform the job.  AR 65-66.  Even assuming,
however, that the job required a higher reasoning level than

28

Plaintiff possesses, the VE was unequivocal that the job of Final Assembler, Optical Goods required no such reasoning ability and that a person with Plaintiff's mental limitations would be able to do such a job.  AR 64.  The VE noted that 1,500 such jobs existed in the local economy.  AR 64.

Accordingly, the ALJ did not err in finding that Plaintiff was capable of performing work with significant numbers of jobs in the local economy.  See Barker v. Sec'y of Health and Human Servs., 882 F.2d 1474 (9th Cir. 1989) (holding that Ninth Circuit has established no minimum number of jobs, and that a total of 1,266 jobs was significant).

CONCLUSION

Because the ALJ properly applied the five-step analysis to conclude that Plaintiff was not disabled, and for the more specific reasons outlined above, Defendant did not commit reversible error. The Court finds that the ALJ's decision that Plaintiff is not disabled within the meaning of the SSA was supported by substantial evidence in the record and was based upon proper legal standards. Accordingly, Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED.  The Clerk shall enter judgment accordingly and close the file.  Each party shall bear his or her own costs.

IT IS SO ORDERED.

Dated: July 16, 2010

_____

United States District Judge